## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DORA RUIZ; AND NORA ESTRADA, INDIVIDUALLY, AND AS NEXT FRIEND FOR EDDIE ORTEGA AND AALIYAH ORTEGA,** | § § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CASE NO. 16-CV-3090** |
| **COMBINED TRANSPORT, INC.; COMBINED TRANSPORT LOGISTICS GROUP, INC.; CARDMOORE TRUCKING LIMITED PARTNERSHIP; AND MICHAEL EUGENE DAVIS** | § § § § § § § | **(On removal from the 133rd Judicial District Court of Harris County, Texas, under Cause No. 2015-42296)** |
| **Defendants.** | § | **JURY DEMAND** |

### PLAINTIFF DORA RUIZ'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

DOYLE RESTREPO HARVIN & ROBBINS, L.L.P.

By: */s/ James Eloi Doyle*
James Eloi Doyle
Fed. ID 4848
State Bar No. 06093500
jdoyle@drhrlaw.com

440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF DORA RUIZ**

OF COUNSEL:

**DOYLE RESTREPO HARVIN & ROBBINS, L.L.P.**

Michael D. Robbins
Fed. ID. 1362
State Bar No. 16984700
mrobbins@drhrlaw.com
440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

**MANELA LAW FIRM**

Mark D. Manela
Fed. ID 1821
State Bar No. 12894500
mmanela@manelalawfirm.com
440 Louisiana, Suite 2300
Houston, Texas 77002
(713) 240-4843 (telephone)

**ATTORNEYS FOR PLAINTIFF DORA RUIZ**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iv

Summary of Response to Defendants Motion for Partial Summary Judgment ................ vi

Nature and Stage of the Proceeding .............................................................................. vii

Statement of the Issues ................................................................................................... vii

Response to Motion for Partial Summary Judgment and Brief in Support ........................ 1

I.  Factual Background .............................................................................................. 1

   A.  The Crash ...................................................................................................... 1

   B.  Discovery Establishes Ms. Ruiz's Claim ...................................................... 2

      1.  The defective clamps were critical to transporting the wind
          turbine tower sections .......................................................................... 3

      2.  Combined Transport designed and manufactured the defective
          clamps and provided them to Cardmoore. ........................................... 5

      3.  At the time of the Crash, the rig and Schnabel were owned by
          Cardmoore and were operated by Cardmoore's employee. ................... 5

      4.  Combined Transport performed a root cause analysis of the
          Crash and determined that the failure of the defective "dog-
          ear" clamp caused the Crash and that Combined Transport is
          100% responsible. .............................................................................. 6

II.  Argument ............................................................................................................. 7

   A.  Legal Standard for Summary Judgment. ........................................................ 7

   B.  The "Dog-Ear" Load Clamp was Placed into the Stream of Commerce
       under Texas Law. .......................................................................................... 8

      1.  A product need not be sold or leased in order to enter the stream
          of commerce. ....................................................................................... 8

      2.  Combined Transport placed the defective "dog-ear" load
          clamp into the "stream of commerce" ................................................ 11

III.  Conclusion ......................................................................................................... 12

Certificate of Service .................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................... viii, 7

*Armstrong Rubber Co. v. Urquidez*,
570 S.W.2d 374 (Tex. 1978) ................................................................................. 9

*Bank of Am., N.A. v. Fulcrum Enters., LLC*,
20 F. Supp. 3d 594 (S.D. Tex. 2014) .............................................................. viii, 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..................................................................................... viii, 7

*Darryl v. Ford Motor Co.*,
440 S.W.2d 630 (Tex. 1969) ....................................................................... viii, 9, 11

*Davis v. Gibson Prods. Co.*,
505 S.W.2d 682 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.) ..................... 8

*Evans v. City of Houston*,
246 F.3d 344 (5th Cir. 2002) ........................................................................ viii, 7

*FFE Transportation Services, Inc. v. Fulgham*,
154 S.W.3d 84 (Tex. 2004) ................................................................................. 10

*Firestone Steel Prods. Co. v. Barajas*,
927 S.W.2d 608 (Tex. 1996) ........................................................................ viii, 8

*Hernandez v. Tokai Corp.*,
2 S.W.3d 251 (Tex. 1999) ........................................................................... viii, 10

*Houston Lighting & Power Co. v. Reynolds*,
765 S.W.2d 784 (Tex. 1988) ........................................................................ viii, 8

*McKisson v. Sales Affiliates, Inc.*,
416 S.W. 2d 787 (Tex. 1967) ............................................................................... 8

*Nazari v. Kohler Co.*,
No. 07-50188, 2008 U.S. App LEXIS 21531, 2008 WL 4542850
(5th Cir. Oct. 13, 2008) ...................................................................................... 8

*New Tex. Auto Auction Servs., L.P., v. Gomez De Hernandez*,
249 S.W.3d 400 (Tex. 2008) ............................................................................... 9

*Pittsburgh Coca-Cola Bottling Works of Pittsburgh, Tex. v. Ponder*,
443 S.W.2d 546 (Tex. 1969) ........................................................................ viii, 10

*Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*,
    404 F. Supp. 2d 942 (S.D. Tex. 2005) .................................................................viii, 7

*Shoppers World v. Villarreal,*
    518 S.W.2d 913 (Tex. Civ. App.—Corpus Christi 1975 writ ref'd n.r.e.) ..........viii, 10

*Topalian v. Ehrman*,
    954 F.2d 1125 (5th Cir.1992) ..........................................................................................7

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 82.001(3).................................................................viii, 8

**Rules**

FED. R. CIV. P. 56 ............................................................................... vi, vii, viii, 7

## SUMMARY OF RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants resort to a "no evidence" motion for partial summary judgment (the "Motion") that does not procedurally exist under the Federal Rules of Civil Procedure. Contrary to Federal Rule 56, Defendants fail to present to the Court any evidence in the record to carry their initial burden to establish a lack of a genuine issue of material fact. They wrongly believe that by the mere incantation of the words "no evidence," they avoid the need to affirmatively establish the legal basis for their Motion. However, under the Federal Rules, they must point to some evidence beyond the pleadings such as relevant deposition testimony, interrogatory answers, admissions or affidavits to establish that there is an absence of a genuine dispute with respect to a material fact supporting Plaintiff's claim and that Defendant is entitled to judgment as a matter of law. Even though Defendants fail to present any evidence to the Court, as described further below, facts do exist that one of the defendants, Combined Transport, placed a defective "dog-ear" load clamp into the "stream of commerce," under Texas law, knowing that this was a critical part and that if it failed, it could cause "chaos" on the public highways leading to injury or death. The inevitable failure of the defective product caused the injuries suffered by Dora Ruiz on November 24, 2014. Discovery establishes and Defendants now concede in sworn deposition testimony that Defendant Combined Transport is "a hundred percent . . . responsible" and that they "have to take responsibility for the accident." Thus, Defendants' Motion must fail.

## NATURE AND STAGE OF THE PROCEEDING

On July 22, 2015, Deven Tesean Bowe initiated the Texas state district court action Cause No. 2015-42296, *Deven Tesean Bowe, et al. v. Combined Transport, Inc., et al.* in the District Court of Harris County, Texas, 133rd Judicial District (the "State Court Action"). Through subsequent amendments, he made claims against Combined Transport Inc. ("Combined Transport"), Combined Transport Logistics Group, Inc., Cardmoore Trucking Limited Partnership ("Cardmoore") and Michael Eugene Davis (collectively, the "Defendants") asserting claims of negligence, products liability and gross negligence for the Crash that occurred on November 24, 2014. On August 28, 2015, Dora Ruiz joined the lawsuit as an intervenor-plaintiff and asserted the same claims against the Defendants and others. Mr. Bowe and other intervening plaintiffs settled their claims and were dismissed from the State Court Action and the case was set for trial on October 17, 2016 with Ms. Ruiz as the sole plaintiff. Immediately before trial, on October 7, 2016, Nora Estrada intervened as a plaintiff.

The case was called to trial in the State Court Action and on October 18, 2016, Defendants removed the State Court Action to this Court. Initial disclosures were made by the parties and the discovery period in the federal action ended on October 30, 2017. The case is scheduled for mediation before Alice Oliver-Parrott on December 13, 2017 and docket call for trial is set for January 29, 2018.

## STATEMENT OF THE ISSUES

1.    *Whether Defendants properly assert a "no evidence" motion for summary judgment under FED. R. CIV. P. 56.* No evidence summary judgments do not exist in federal

civil procedure. *See, e.g., Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 947–48 (S.D. Tex. 2005). Under Rule 56, the movant has the initial burden of establishing the lack of a genuine dispute regarding an issue of material fact by pointing to the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of genuine fact issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986); *Bank of Am., N.A. v. Fulcrum Enters., LLC*, 20 F. Supp. 3d 594, 602 (S.D. Tex. 2014). In response, the non-moving party must then proffer evidence of a genuine material fact to be resolved at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). All reasonable inferences must be given to the non-movant. *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2002).

2.     *Whether evidence exists in the record that Defendants placed the defective product in the "stream of commerce."* A party bringing a product's liability claim in Texas must prove that the defendant placed the product into the stream of commerce; however, the party need not prove that the defendant actually sold the product. *See* TEX. CIV. PRAC. & REM. CODE § 82.001(3); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996); *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988). Texas law recognizes that third-parties who are injured by defective products used or owned by others, have viable products liability claims. *See Hernandez v. Tokai Corp.,* 2 S.W.3d 251 (Tex. 1999); *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex. 1969); *Pittsburgh Coca-Cola Bottling Works of Pittsburgh, Tex. v. Ponder,* 443 S.W.2d 546 (Tex. 1969); *Shoppers World v. Villarreal,* 518 S.W.2d 913 (Tex. Civ. App.—Corpus Christi 1975 writ ref'd n.r.e.).

## RESPONSE TO MOTION FOR PARTIAL
## SUMMARY JUDGMENT AND BRIEF IN SUPPORT

### I.    FACTUAL BACKGROUND

**A.    The Crash**

The crash at issue in this case occurred at about 1:00 p.m. on November 24, 2014, at the on-ramp from Loop 610 to Interstate 59/69 ("I-59/69") in Houston, Texas (the "Crash"). Defendant Davis was driving a tractor for Defendant Cardmoore, hauling an extremely oversized load, consisting of a 180 foot long section of a wind turbine tower retained without a flatbed between two unique and large "Schnabel" trailers. As Davis was entering onto I-59/69 from Loop 610, a "dog-ear" load clamp on the rear Schnabel trailer acting as a supporting clamp on the flange on the lower driver's side of the tower failed, causing the oversized load to shift and whip the load into and across the northbound lanes of I-59/69. As it crossed the lanes, the rear Schnabel began to disconnect from the load and struck a box truck being driven by Efrain Gomez. The force of the collision completed the separation of the rear Schnabel from the tower and the Schnabel continued to whip across traffic and crashed into the "Jersey" barrier separating the southbound and northbound traffic on I-59/69. The tower, now separated from the rear Schnabel, was dragged by the tractor, creating an obstruction in the highway in front of all vehicular traffic, including the vehicles being driven by Ms. Ruiz, Mr. Gomez, Nora Estrada, and Deven Tesean Bowe. This chaos caused a multi-car pile-up, severely injuring Ms. Ruiz, who suffered serious head, neck, and shoulder injuries as a result of the Crash. The scene of the Crash is shown below:



Ms. Ruiz's vehicle is the white SUV pinned to the center median on the left side of the photo.

**B.      Discovery Establishes Ms. Ruiz's Claim**

Discovery establishes the following key points that demonstrate that the "dog-ear" load clamp was defectively designed and manufactured by Defendant Combined Transport and that it was thereafter supplied to Defendant Cardmoore for use on Cardmoore's Schnabels. The Schnabel with the broken "dog-ear" load clamp (center bottom of the picture) is shown below and attached as Exhibit A:



Ex. A, Pacheco Dep. Ex. 73.

        ***1.***      ***The defective clamps were critical to transporting the wind turbine tower sections.***

Defendant Combined Transport entered into a contract with a company, Acciona Wind Power North America LLC ("Acciona"), to transport over-sized sections of giant wind turbine towers. (*See* Ex. B, Card Dep. 37:23–38:9; *see also* Ex. K, Keller Dep. 182:21–183:25.) Combined Transport typically utilized Defendant Cardmoore, a related, but separate entity, to transport these oversized and dangerous loads. In transporting the loads, Cardmoore used tractors and Schnabels that it owned. In order to use these

specialized trailers, the inner flange of the tower sections must be gripped and tightened by "dog-ear" load clamps located at the bottom of the load. If the clamp did not fit, Cardmoore and, as a result, Combined Transport, could not perform under the contract with Acciona. Thus, the "dog-ear" load clamp was critical to Combined Transport's sale of transportation services. The deposition testimony in the case establishes that in approximately April 2014, Bob Pacheco, the Heavy Haul Manager for Cardmoore (*see* Ex. C, Pacheco Dep. 13:2–8) reviewed the flange thickness for the tower sections to be moved and determined that the thickness of the flanges were too wide for the existing "dog-ear" load clamps then used by Cardmoore (*see id.* 38:9–15, 45:2–46:21). He communicated this to Scott Waggoner of Combined Transport. (*See id.* 45:6–10, 47:4–25.)

Michael Card, who wore many "hats" and was the president of Combined Transport (*see* Ex. B 8:2–19), testified that at the time, Combined Transport knew the "dog-ear" was a critical part of the Schnabel and that if it failed, "chaos can happen" (*see id.* 50:23–51:3). Nevertheless, as was Combined Transport's practice, it modified the part without the original manufacturer's (Aspen Custom Trailers) engineering input. (*See id.* 51:4–17.) In fact, Combined Transport did no engineering studies or testing on its modified product to determine if it would withstand the extreme loads that would be placed on the part during normal use. (*See id.* 50:6–51:6; 107:19–108:14.) And Combined Transport has not been able to produce a design drawing of their modified and defective "dog-ear" load clamp.

4

### 2. Combined Transport designed and manufactured the defective clamps and provided them to Cardmoore.

It is undisputed that Combined Transport designed and fabricated the defective "dog-ear" load clamp used by Defendant Cardmoore to accommodate the wider flanges in order to perform under the contract with Acciona. Without performing any engineering or design studies or testing of its own, Combined Transport employees merely used the old style clamp drawing in its possession and made it larger. (*See* Ex. D, Spencer Dep. 22:8–24:8; 26:24–31:2.) Combined Transport would then use its own metal fabricators and welders to manufacture the modified part. (*See* Ex. E, Spencer e-mail dated July 21, 2014 (thanking the fabricators for "all that [they] do to bail [Combined Transport] out (all the time!!)".) According to Ken Mitchell, Combined Transport's shop foreman (*see* Ex. F, Mitchell Dep. 16:16–21), once the parts were fabricated, they were assembled by Combined Transport's employees (*see id.* 14:16–15:7), who ignored the manufacturer's design blueprints for the earlier, smaller design and welded precisely where the old drawing warned not to weld (*see* Ex. G, Gunther Dep. 22:3–21). Defendant Combined Transport then provided its defectively manufactured "dog-ear" to Mr. Pacheco, of Defendant Cardmoore, to insert into the Schnabels used to haul the top section involved in this Crash. (*See* Ex. F 16:4–8; Ex. G 30:6–12; Ex. B 16:1–6, 51:14–17.)

### 3. At the time of the Crash, the rig and Schnabel were owned by Cardmoore and were operated by Cardmoore's employee.

Deposition testimony and document production in this case clearly establishes that the rig involved in the Crash (the "Rig") was owned by Defendant Cardmoore at the time of the Crash. (*See* Ex. B 14:4–10, 32:6–33:11; *see also* Ex. H, Registration Certificates.)

Michael Card testified that the driver of the Rig at the time of the Crash, Defendant Michael Davis, was employed by Cardmoore. (*See* Ex. B 13:25–14:3.) In addition, Mr. Card testified that the Rig and the Schnabel involved in the Crash were also owned by Cardmoore. (*See id.* 14:4–10, 32:3–33:11.) The Oregon registration documents produced by the Defendants show that the Rig and the Schnabel were both owned by Cardmoore. (*See* Ex. H.)

> **4.    *Combined Transport performed a root cause analysis of the Crash and determined that the failure of the defective "dog-ear" clamp caused the Crash and that Combined Transport is 100% responsible.***

Mr. Card performed a root cause analysis of the Crash within a month of its occurrence. (*See* Ex. B 40:24–41:11, 54:1–3; *see also* Ex. I, Root Cause Analysis by Card.) In the root cause analysis, Mr. Card identified two causes of the Crash and determined that Combined Transport was the responsible party. (*See* Ex. I.) Based on this analysis, Mr. Card wrote to Bill Morgan of Acciona on December 22, 2014 explaining how the "dog-ear" load clamp failed not only in *this* Crash but a subsequent accident in Seymour, Texas and described how Combined Transport would prevent further crashes with a properly engineered clamp from Aspen Custom Trailers in place of Defendant Combined Transport's defective part. (*See* Ex. J, Card e-mail to Morgan dated December 22, 2014.) Thus, Mr. Card testified that Defendant Combined Transport was responsible for providing the defective part to Defendant Cardmoore and bears "a hundred percent" responsibility for the failure of the clamp during transportation. (*See* Ex. B 24:24–25:20, 27:3-7.)

## II.   ARGUMENT

### A.   Legal Standard for Summary Judgment.

Without citation to the record or affidavits, Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure. They merely recite that "there is no evidence that Defendants placed the alleged product in the 'stream of commerce.'" (Motion p. 6.) A "no evidence motion" is a pleading that may be filed in state court in Texas under the Texas Rules of Civil Procedure, but it does not have a home in federal court. *See, e.g., Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 947– 48 (S.D. Tex. 2005) ("[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in the vernacular of federal summary judgment procedure."). Under Rule 56, the movant has the initial burden of establishing the lack of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). In addition to informing the Court of the basis for its Motion, a party must also "point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues." *Bank of Am., N.A. v. Fulcrum Enters., LLC*, 20 F. Supp. 3d 594, 602 (S.D. Tex. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992)); *see also Anderson*, 477 U.S. at 263. In response, the non-moving party must then proffer evidence of a genuine material fact to be resolved at trial. *Celotex Corp.*, 477 U.S. at 322–25. In considering the evidence, all inferences must be given to the non-movant. *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2002). Defendants argue that they did not place the "dog-ear" load clamp into the "stream of

commerce" under Texas law. Contrary to this assertion, facts do exist in the record to support the submission of products liability to the jury in this case.

**B.    The "Dog-Ear" Load Clamp was Placed into the Stream of Commerce under Texas Law.**

        ***1.    A product need not be sold or leased in order to enter the stream of commerce.***

A plaintiff bringing a defective product claim must prove that the defendant placed a product into the stream of commerce. *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988). However, Texas law does not require the defendant to actually sell the product, but instead requires only that the defendant be responsible for introducing the product into the stream of commerce. TEX. CIV. PRAC. & REM. CODE § 82.001(3) ("'Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereo[.]"); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) ("[T]o incur liability, a defendant does not have to actually sell the product; introducing the product into channels of commerce is enough.").

As recognized by the unpublished opinion attached to the Defendants' Motion, *Nazari v. Kohler Co.,* No. 07-50188, 2008 U.S. App LEXIS 21531, 2008 WL 4542850, at *2–3 (5th Cir. Oct. 13, 2008), Texas courts have held manufacturers liable in strict products liability even when a product is not actually sold. *See, e.g., McKisson v. Sales Affiliates, Inc.,* 416 S.W. 2d 787, 792 (Tex. 1967) (samples); *Davis v. Gibson Prods. Co.,* 505 S.W.2d 682, 689–92 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.) (display products, even

if person does not purchase). Texas law also may impose strict products liability with regard to bailments that accompany the sale of a service. *New Tex. Auto Auction Servs., L.P., v. Gomez De Hernandez*, 249 S.W.3d 400, 403 n. 16, 405–06 (Tex. 2008) (citing holding in *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376–77 (Tex. 1978), but holding that an auctioneer was not liable under products liability). The common thread in these cases is that a defendant manufacturer provided a product to a separate entity in the normal course of its business in order to realize commercial gain.

To recover under a theory of products liability, the injury must occur after the defective product enters the stream of commerce. Here, Defendant Combined Transport created the modified "dog-ear" load clamp, a critical part without which the existing rigs could not transport the top tower sections under the contract with Acciona. There can be no question but that the transportation of these tower sections was for commercial profit. If successful, not only would the new product work for Defendant Cardmoore's Schnabels, but it would be available commercially for other trucking companies to use with their own Schnabel-type trailers. Thus, Combined Transport is liable in products liability because it placed the defective "dog-ear" load clamp into the stream of commerce.

It has long been the law in Texas that a plaintiff injured by a defective product does not need to be a consumer or user of that product. The Texas Supreme Court has recognized a claim based on products liability in the context of a motor vehicle collision. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex. 1969) (a plaintiff injured when a truck with defective brakes rear-ended plaintiff's vehicle). The *Darryl* court held "that recovery under the strict liability doctrine is not limited to users and consumers." *Id.* at 633. Texas Courts

also recognize products liability claims for other types of plaintiff bystanders who are injured by defective products owned or used by others. *See, e.g., Hernandez v. Tokai Corp.,* 2 S.W.3d 251 (Tex. 1999) (legal representative of a bystander child allowed to sue for burn injuries suffered from defective lighter used by another); *Pittsburgh Coca-Cola Bottling Works of Pittsburgh, Tex. v. Ponder,* 443 S.W.2d 546 (Tex. 1969) (café operator injured by a defective bottle allowed to sue the bottler of Coke when she did not purchase soft drink); *Shoppers World v. Villarreal,* 518 S.W.2d 913 (Tex. Civ. App.—Corpus Christi 1975 writ ref'd n.r.e.) (shopper injured by defective product she had yet to purchase after she placed the item into her shopping cart in a grocery store).

Defendants' cited cases do not hold otherwise. Defendants' main case, *FFE Transportation Services, Inc. v. Fulgham,* 154 S.W.3d 84 (Tex. 2004), is readily distinguishable. In that case, the Texas Supreme Court held that "strict products liability is inapplicable when . . . [a freight transportation] company gratuitously provides a product to an independent contractor working for the company for the sole purpose of accomplishing the company's business purposes." *Id.* at 85. In that case, the plaintiff was a long-haul trucker and the company was in the business of transporting freight. *Id.* at 86. The plaintiff's contract with the company specified that he would "use his own tractor to transport commodities in trailers owned by" the company "in exchange for a percentage of the transport fee." *Id.* The driver plaintiff was injured when the trailer separated from the tractor causing the driver to lose control and overturn. *Id.*

Unlike *Fulgham*, in which the freight transportation company owned the defective trailer and hired the plaintiff contract driver, Combined Transport was not the

transportation company that owned the trucks and trailers. Combined Transport designed and manufactured a defective "dog-ear" load clamp and provided it to a separate company, Defendant Cardmoore, which was the freight transportation company that owned the Schnabel that crashed while hauling the top wind tower section in this case. Also unlike *Fulgham*, the employee/contractor driver in this case is not the plaintiff. Instead, in this case, Defendant Combined Transport made the defective part and put it into the "stream of commerce" by providing it to a separate company, Cardmoore. The injury occurred to a third party, Ms. Ruiz (and others) who was driving near the defective trailer when it failed and lost its oversized load. In this situation, Texas law recognizes a cause of action against the manufacturer of the defective product. *See Darryl*, 440 S.W. 2d 630.

### 2.    *Combined Transport placed the defective "dog-ear" load clamp into the "stream of commerce"*

Ample evidence exists in this case that Defendant Combined Transport placed the defective "dog-ear" load clamp into the stream of commerce. In 2014, Combined Transport entered into a contract with a Spanish company, Acciona, to transport extremely large wind turbine tower sections from the port of Houston to a wind farm in north central Texas. In April of that year, Mr. Pacheco, who was the Heavy Haul Manager for Cardmoore, realized that the flange on the top section of the new wind turbine towers was much wider than the previous tower segments that had previously been transported using Defendant Cardmoore's Schnabels. In order to accommodate the new and wider flange design, Combined Transport provided modified longer "dog-ear" load clamps for Cardmoore to utilize. Combined Transport did no design engineering or testing on this load clamp before

providing it to Cardmoore. Mr. Card, the president of Combined Transport, testified that the "dog-ear" load clamp was a critical part on the Schnabel and that if it failed, it was foreseeable that "chaos would happen." That is precisely what occurred on November 24, 2014 and this is precisely why Mr. Card stated in his deposition that Combined Transport is 100% responsible for the Crash that injured Ms. Ruiz in this case.

### III.   CONCLUSION

Because (a) Defendants' "no-evidence" motion for summary judgment is improper under the federal rules; and (b) even if proper, evidence exists in the record that Defendant Combined Transport placed the defective "dog-ear" load clamp into the stream of commerce under Texas law, Defendants' Motion for Partial Summary Judgment must be denied.

Respectfully submitted,

**DOYLE RESTREPO HARVIN & ROBBINS, L.L.P.**

By: */s/ James Eloi Doyle*
      James Eloi Doyle
      Fed. ID 4848
      State Bar No. 06093500
      jdoyle@drhrlaw.com

440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

**ATTORNEY IN CHARGE FOR PLAINTIFF DORA RUIZ**

OF COUNSEL:

**DOYLE RESTREPO HARVIN & ROBBINS, L.L.P.**

Michael D. Robbins
Fed. ID. 1362
State Bar No. 16984700
mrobbins@drhrlaw.com
440 Louisiana Street, Suite 2300
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)


**MANELA LAW FIRM**

Mark D. Manela
Fed. ID 1821
State Bar No. 12894500
mmanela@manelalawfirm.com
440 Louisiana, Suite 2300
Houston, Texas 77002
 (713) 240-4843 (telephone)


**ATTORNEYS FOR PLAINTIFF DORA RUIZ**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered in accordance with the Federal Rules on this 20th day of November, 2017:

William S. Bush/A. Scott Alford
Bush & Ramirez, PLLC
5615 Kirby, Suite 900
Houston, Texas 77005
wsbush@bushramirez.com

Andrew E. Lemanski
Andrew E. Lemanski & Associates
9600 Long Point Rd., Suite 150
Houston, Texas 77055
andylemanski@yahoo.com

*/s/ Michael D. Robbins*
Michael D. Robbins

14